# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| STANLEY G. KINKAID, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-0797 (ABJ) |
| | ) | |
| ROBERT A. MCDONALD, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM OPINION

Petitioner Stanley Kinkaid has brought this action seeking to compel Robert McDonald, in his official capacity as Secretary of the U.S. Department of Veterans Affairs ("VA"), and Ash Carter, in his official capacity as Secretary of the U.S. Department of Defense, to award him back pay under the Back Pay Act, 5 U.S.C. § 5596. Pet. for Writ of Mandamus [Dkt. # 1] ("Pet."). He claims respondents have failed to award him the wages he is owed for the period between his unjustified discharge and the administrative decision ordering his reinstatement. *Id.* at 1–2. Respondents have moved to dismiss the petition for lack of subject matter jurisdiction, on the grounds that the Defense Finance and Accounting Service ("DFAS") has paid petitioner in full for the wages he was owed, rendering this action moot. Resp'ts' Mot. to Dismiss as Moot [Dkt. # 22] ("Resp'ts' Mot.") at 1. While it should not have taken as long as it did, petitioner has now received the full amount of back pay to which he is entitled by law, so there is no longer a live case or controversy over which this Court has jurisdiction, and respondents' motion will be granted.

## BACKGROUND

Petitioner was formerly employed as a full-time staff physician at the VA Medical Center in Beckley, West Virginia. Pet. at 2. On April 19, 2011, he was notified of his proposed removal

from his position based on eight charges, which were sustained on May 25, 2011. *Id.* Petitioner

requested a Disciplinary Appeals Board ("DAB") hearing, which was held in December 2012. *Id.*

The DAB upheld five of the charges against petitioner in whole and two in part, and rejected one

charge. *Id.* But on April 25, 2013, the Principal Deputy Under Secretary for Health ordered that

petitioner's charges be overturned on due process grounds, and further ordered that petitioner be

reinstated and that he be awarded back pay within sixty days of the reinstatement decision. *Id.*

Petitioner states that he repeatedly contacted the VA to inquire as to the status of his award.

Pet. at 3. He initiated this civil action on May 31, 2015, and alleged that as of the date of filing,

he had still not received any back pay. *Id.* at 4. Respondents answered the petition on September

18, 2015, Resp'ts' Answer to Pet. [Dkt. # 8], and after the parties agreed that there was "a realistic

possibility of resolving this case without further litigation," *see* Joint Rule 16 Pretrial Conf. Report

[Dkt. # 13] at 2, the parties engaged in several attempts to settle the matter through the exchange

of documentation regarding petitioner's claimed back pay and respondents' calculations of the

amount owed. *See* Joint Status Reports [Dkt. ## 15–19].

On January 27, 2016, DFAS mailed petitioner a check for $116,499.87 for back pay and

interest. Resp'ts' Mot. at 2; Decl. of Lilia Rivera [Dkt. # 25] ("Rivera Decl.") ¶ 5; *see also* Pet'r's

Opp. to Resp'ts' Mot. [Dkt. # 27] ("Pet'r's Opp.") at 2 (acknowledging that petitioner received the

check). Accordingly, respondents have moved to dismiss the petition as moot. Resp'ts' Mot. at

1. Petitioner opposes the motion, arguing that respondents' calculations of his back pay award

"improperly deduct portions of non-replacement wages" and that he has therefore only received

part of what his petition seeks. Pet'r's Opp. at 1.

## STANDARD OF REVIEW

In evaluating a motion to dismiss under Rule 12(b)(1), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citations omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction

to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## ANALYSIS

Respondents have moved to dismiss this action for lack of subject matter jurisdiction on the grounds that the payment of $116,499.87 renders petitioner's petition moot. Resp'ts' Mot. at 1–2. Petitioner has opposed the motion, arguing that respondents' calculations improperly deducted petitioner's outside earnings from the total amount of back pay he was owed, and that the award is therefore incomplete. Pet'r's Opp. at 1. But the Court finds that DFAS correctly calculated the amount of wages petitioner was owed under the relevant statute and regulations. Since petitioner has been made whole, there is no longer a live case or controversy, and the Court will grant respondents' motion to dismiss this matter.

"The purpose of the Back Pay Act was to make an employee affected by an unjustified personnel action financially whole . . . ." *Am. Fed'n of Gov't Emps. v. FLRA*, 843 F.2d 550, 555 (D.C. Cir. 1988); *see also Martin v. Dep't of Air Force*, 184 F.3d 1366, 1372 (Fed. Cir. 1999) ("[T]he purpose of the Back Pay Act is to place a wrongfully discharged employee back in the position he would have been in had the termination not occurred . . . ."). In furtherance of that goal, the Back Pay Act provides that a government employee who has been subjected to an unjustified personnel action which caused him to suffer a loss in pay:

> is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect –
>
>> (i) an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had

4

> not occurred, less any amounts earned by the employee through
> other employment during that period . . . .

5 U.S.C. § 5596(b)(1)(A)(i).

Here, in support of their position that petitioner has been made whole by the back pay award he has already received, respondents rely on the declaration of Lilia Rivera, a DFAS Financial Systems Analyst. Resp'ts' Mot. at 3–4; Rivera Decl. ¶ 1. Rivera avers that petitioner's gross back pay totaled $456,714.05, but that the award was subject to a series of deductions: $192,534.86 in outside earnings received by petitioner during the separation period; $39,384.15 for a lump sum accumulated annual leave payment; $26,316.90 for a lump sum payment for market pay; $1,091.00 in mandatory employee retirement contributions; $10,224.93 in Social Security and Medicare taxes; $28,789.11 in federal income tax; $9,263.00 in state income tax; and $56,415.00 in Thrift Savings Plan deductions. Rivera Decl. ¶ 5. She adds that petitioner was awarded $23,804.77 in interest pursuant to 5 C.F.R. § 550.806. *Id.* ¶ 6. After those deductions and with interest, petitioner's net back pay award totaled $116,499.87. *Id.* ¶ 5.

Petitioner does not appear to challenge the majority of the deductions listed by Rivera or the amount of interest to which he was entitled, but he insists that the deduction for outside earnings was improper, because respondents failed to "tak[e] into account the nature of those earnings in comparison to [his] government employment." Pet'r's Opp. at 1. Specifically, he maintains that "these earnings are not equivalent and should not be . . . treated as solely replacement income," because his "work during his separation period was . . . not substantially similar" to his work at the VA, and because he "had to work more hours in a week, with longer work days and weekend work, compared to his VA schedule." *Id.* at 5, 7.

But there is no support in the statute, regulations, or case law for petitioner's position.  The

relevant regulation requires that "an agency must make the following offsets and deductions" in

calculating a net back pay award under the Back Pay Act:

> Any outside earnings (gross earnings less any associated business losses
> and ordinary and necessary business expenses) received by employee for
> other employment (including a business enterprise) undertaken to replace
> the employment from which the employee was separated by the unjustified
> or unwarranted personnel action during the interim period covered by the
> corrective action.

5 C.F.R. § 550.805(e)(1).  The regulation further provides that the agency should not deduct

"earnings from additional or 'moonlight' employment the employee may have engaged in while

Federally employed (before separation) and while erroneously separated."  *Id.*

Here, petitioner explains that "[f]ollowing [his] suspension from the VA, he began working

at other medical practices in an attempt to support himself and his family while his administrative

case was ongoing."  Pet'r's Opp. at 5.  By his own admission, then, the wages he obtained from

that employment are "outside earnings" received for employment "undertaken to replace the

employment from which [petitioner] was separated" improperly.  5 C.F.R. § 550.805(e)(1).  As

discussed in greater detail below, the wages are not subject to the "moonlighting" exception,

because petitioner does not allege that he engaged in that employment both "before separation"

and after.  *Id.*  Based on the plain language of the statute – which requires the agency to deduct

"any amounts earned by the employee through other employment" during the separation period, 5

U.S.C. § 5596(b)(1)(A)(i) – and the regulations, the Court finds that the agency properly deducted

the income petitioner earned from working at other medical practices during the period in question,

and that the award he received was in the correct amount.

Petitioner insists that the outside earnings deduction was improper because DFAS's

"calculations of back pay do not look at the substantial differences in [his] employments."  Pet'r's

Opp. at 7. He states that he "could work 40 hours at the VA, but have to work 70 hours at his separation jobs (and still net less income)," and he argues that DFAS therefore incorrectly deducted "the entirety of those 70 hours of pay . . . from the VA's 40 hours of pay." *Id*. But this argument is unavailing: the regulation provides that "[*a*]*ny* outside earnings" should be deducted from the back pay award, and it provides no basis to adjust an outside earnings deduction based on the number of hours an employee must work to match his former earnings or to differentiate between similar and dissimilar types of employment. *See* 5 C.F.R. § 550.805(e)(1) (emphasis added).

In support of his claim that his interim employment was not sufficiently similar to his VA employment and that the wages therefore should not be deducted from his award, petitioner relies upon two employment discrimination cases brought pursuant to Title VII of the Civil Rights Act. *See* Pet'r's Opp. at 6–7, citing *Ford Motor Co. v. EEOC*, 458 U.S. 219 (1982), and *Donlin v. Phillips Lighting N. Am. Corp.*, 581 F.3d 73 (3d Cir. 2009). Those decisions have no relation to or bearing upon the proper application of the Back Pay Act, and they do not support petitioner's position in any event. Both cases provide that a Title VII plaintiff who obtains a better or substantially equivalent replacement position is not entitled to lost wages damages from that point forward. *See Donlin*, 581 F.3d at 84 ("When a plaintiff finds employment that is equivalent or better than the position she was wrongly denied, the right to damages ends because it is no longer necessary to achieve an equitable purpose . . . ."); *see also Ford Motor Co.*, 458 U.S. at 236 ("[T]he victim of discrimination who finds a better or substantially equivalent job no longer suffers ongoing injury stemming from the unlawful discrimination."). So they offer petitioner with no support for his back pay claims here.

Petitioner also argues that earnings from his replacement position for hours he worked in excess of his VA schedule should not be deducted from his back pay award because those hours

constitute overtime.  *See* Pet'r's Opp. at 8–9, citing *Piscopo v. Pub. Serv. Elec. & Gas Co.*, No. 13-552 (ES), 2014 WL 3014284, at *4 (D.N.J. July 3, 2014), and *Aboud v. City of Wildwood*, No. 12-7195 (JS), 2013 WL 2156248, at *5 (D.N.J. May 17, 2013).  He insists that "the courts have held that prior employment *overtime should not be included* when calculating back pay."  *Id.* at 8.  But as with his other arguments, there is no basis for such an interpretation in the statute or in the relevant regulations, which do not distinguish in any way between earnings from regular work hours and overtime hours, and the cases upon which he relies are inapposite.[1]

Because he "worked at different clinics on both nights and weekends," which were "not time periods that [he] could have been working at the VA," petitioner also claims that "[t]hese shifts would qualify as 'moonlighting' under the Back Pay Act . . . and therefore should not be included in the deduction calculations."  *Id.* at 9.  But the regulations are clear that in order for earnings from "moonlight" employment to be shielded from an outside earnings deduction, the employee must have been engaged in that occupation "while Federally employed (*before separation*) and while erroneously separated."  5 C.F.R. § 550.805(e)(1) (emphasis added).[2]  Petitioner does not allege that he had engaged in the night and weekend clinical work prior to his

---

[1]   Both *Piscopo* and *Aboud* involved claims for overtime compensation under the Fair Labor Standards Act, and have no discernible relevance to the calculation of outside earning deductions under the Back Pay Act.  In *Piscopo*, the court explicitly rejected the plaintiff's argument that the Back Pay Act applied, *see* 2014 WL 3014284, at *4 ("[N]either the Back Pay Act, nor the related cited regulation, applies."), and back pay is not even mentioned in *Aboud*.

[2]   Petitioner argues that "[n]either the regulation . . . nor case law states that the [petitioner] *must* have been engaged in the moonlighting prior to his separation, but instead they both state that moonlighting work is work that the plaintiff 'may' have done 'while employed' in his VA position."  Pet'r's Opp. at 9.  Petitioner appears to be arguing that the moonlighting exception does not require the employee to have held the moonlighting position prior to the termination of his federal employment – it just permitted him to do so.  But petitioner's reading is counter to the plain language of the regulation.  *See* 5 C.F.R. § 550.805(e)(1) ("Do not count earnings from additional or 'moonlight' employment the employee may have engaged in while Federally employed (before separation) and while erroneously separated.").

8

separation from the VA, and in fact, his opposition makes clear that he only began that work after he was wrongfully terminated. *See* Pet'r's Opp. at 5 ("Following [petitioner's] suspension from the VA, he began working at other medical practices in an attempt to support himself and his family while his administrative case was ongoing."). So the exception for earnings from "moonlight" employment plainly does not apply.[3]

Finally, petitioner appears to argue in his opposition that respondents' delay in awarding him back pay constitutes a violation of the Administrative Procedure Act, *see* Pet'r's Opp. at 11, which requires that "each agency shall proceed to conclude a matter presented to it" "[w]ith due regard for the convenience and necessity of the parties." 5 U.S.C. § 555(b). Such a claim is entirely absent from his petition, and it is unavailing in any event. Petitioner has been compensated for the delay in awarding him the back pay through the inclusion of $23,804.77 in interest in his final award. *See* Rivera Decl. ¶ 6. The APA does not provide a separate cause of action for awarding him additional damages, nor does it provide a basis for the Court to find that this case still presents a live case or controversy.

"Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008), quoting *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the

---

3       In support of his moonlighting argument, petitioner cites *Shapiro v. Textron*, No. 95-4083, 1997 WL 45288 (E.D. La. Feb. 4, 1997), a case brought pursuant to the Age Discrimination in Employment Act. In that case, the court held that income the plaintiff received after termination, which was "unrelated to the termination of his employment," should not be deducted from his back pay award because "he would have received the back pay *in addition* to the income from the other sources" if he had not been wrongly terminated. *Id.* at *1 (emphasis in original). That is not the case here, where the earnings in question are from employment that petitioner obtained only after termination, and were not earned in addition to his federal employment. *See* Pet'r's Opp. at 5.

outcome." *Cty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979), quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969).  "Even where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'"  *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990), quoting *Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 575 (D.C. Cir. 1990).

Here, the Court finds that petitioner has received the amount of back pay and interest to which he is properly entitled by law.  Accordingly, his requests that respondents "[p]rocess [his] owed back pay, including actual pay owed," and award him interest, *see* Pet. at 8, have been fulfilled and the purpose of the Back Pay Act – "to make an employee affected by an unjustified personnel action financially whole," *Am. Fed'n of Gov't Emps.*, 843 F.2d at 555 – has been served. The petition therefore no longer presents a live case or controversy over which this Court has subject matter jurisdiction.

**CONCLUSION**

Because petitioner has been awarded the back pay and interest to which he is entitled under the Back Pay Act, his petition is moot.  The Court therefore lacks jurisdiction over this dispute, and respondents' motion to dismiss this action pursuant to Rule 12(b)(1) will be granted.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  September 22, 2016